COSMOPOLITAN TRUST COMPANY *vs.* HENRY CIRACE & another.

Suffolk.    January 17, 1924. — February 27, 1924.

Present: RUGG, C.J., DECOURCY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Pleading and Practice, Appeal; Master: findings by master, exceptions to report; Decree. Bills and Notes, Consideration. Estoppel. Trust, Constructive.*

Where a suit in equity was referred to a master who filed a report without a report of the evidence, exceptions to his findings of fact or to failure on his part to find facts must be overruled.

Where, at a hearing of a suit in equity by a master, the genuineness of signatures of a defendant upon a mortgage note and mortgage is an

issue, testimony of one who for a number of years, including the time to which the suit referred, had been treasurer of a bank with whom such defendant had done business and who had seen the defendant "sign his name to one or more notes," will warrant an exercise of discretion by the master qualifying such witness to testify as an expert on the question of the genuineness of signatures; and, such signatures being found to be genuine, the mortgage note and mortgage may be admitted in evidence regardless of the genuineness of the signature of another person who was not a party to the suit.

One who presented to a bank a mortgage note and mortgage purporting to be his own, or caused them to be presented in his behalf, to be used as security for a loan to him from the bank, is estopped to deny the genuineness of the documents.

In a suit in equity to enforce payment of a balance due on a mortgage note, given by the defendant to a trust company which had indorsed it to the plaintiff for value, evidence is not admissible tending to show that the loan for which the note was given was procured by the defendant for and in behalf of a corporation, of which he had a controlling interest, in transactions with and for the benefit of another corporation, neither corporation being a party to the suit or to the note.

A promissory note, secured by a mortgage of real estate, given by one who is the principal stockholder of, in control of, and the person primarily interested in a corporation, for the purpose of further securing the payment of a loan previously made by the payee to the corporation, cannot be held as a matter of law to be without consideration in a suit by an assignee of the mortgage and note to recover a balance due thereon after foreclosure of the mortgage.

In a suit to establish a debt due from the maker of a note secured by a mortgage of real estate to an assignee of the mortgage and mortgage note, and to reach and apply in payment of such debt an amount alleged to be due to the maker from one who was a tenant on the premises and remained in possession after foreclosure, and for general relief, it appeared that, after a sale in foreclosure and a conveyance to the plaintiff as purchaser, the defendant tenant from a subletting of the premises received rent in the sum of $1,215.   A final decree was entered directing the maker of the note to pay to the plaintiff the amount still due thereon, and directing the tenant to pay to the plaintiff the amount so received as rentals.   Both defendants appealed.   *Held,* that it could not be said that the decree was unwarranted in holding the tenant liable to the plaintiff, whether it was based on the application to the debt of the maker of money due to him from the tenant under a lease or, under the prayer for general relief, upon the tenant's duty to pay to the plaintiff as purchaser at the foreclosure sale the rentals collected after that sale and conveyance, which the tenant held only as constructive trustee for the plaintiff.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on December 27, 1921, against Henry Cirace and Grudita Florio to establish a debt of the defend-

ant Cirace to the plaintiff and to reach and apply toward its payment an amount alleged to be due to Cirace from Florio, and for general relief.

The suit was referred to a master. It appeared that the note which was the basis of the suit was for $10,000, dated December 23, 1918, payable to the Fidelity Trust Company on demand with six per cent interest; and that it was secured by a mortgage of real estate of the defendant Cirace. The assignment to Dewey, described in the opinion, was dated April 18, 1919, and that by Dewey to the plaintiff was dated June 19, 1919. Both assignments were recorded on December 12, 1921. Other material findings by the master are described in the opinion. The rulings by the master as to evidence, to which the defendant excepted, were in substance as follows:

One George M. Rich, treasurer of the plaintiff in December, 1918, and for a considerable time before and after that time, was permitted, subject to exceptions by the defendants, to answer affirmatively the following question: " Did you have occasion in your official capacity to pass upon Mr. Cirace's signature? " Having further testified that he had seen the defendant Cirace sign his name to one or more notes, the witness was asked, with reference to the notes and the mortgage by Cirace to the Fidelity Trust Company, described in the opinion, " Do you recognize signatures on any of them [referring to the notes] on this document [referring to a paper purporting to be the mortgage from the defendant Cirace to the Fidelity Trust Company described in the opinion]? " Subject to an exception by the defendant, the witness answered, " Yes." The mortgage, the mortgage notes, copies of an assignment by the Federal Trust Company to one Dewey, Cirace's attorney, certified by the register of deeds, and of the deeds and affidavits in foreclosure of the mortgage, were offered and admitted, and motions by the defendants to strike them from the record were denied subject to exceptions by the defendant.

Testimony tending to show that the loans procured by Cirace and the Italian Importing Company from the plaintiff were for the benefit of a corporation called " Pacific

Products Corporation," and the relations of the three with one another was excluded subject to exceptions by the defendants.

By order of *Crosby*, J., there were entered an interlocutory decree overruling the exceptions and confirming the master's report, and a final decree in substance that as against the defendants the plaintiff had full title to the real estate in question; that the indebtedness of the defendant Cirace to the plaintiff, as a balance due on the note described in the bill, was $4,963.16, and that the plaintiff recover that amount from the defendant Cirace; " that the money received by the defendant Grudita Florio, as rentals of the . . . real estate from . . . the date when the plaintiff obtained its title, to the date of the entry of this decree, to wit: the sum of $1,215, was received by said Grudita Florio for the use and benefit of the plaintiff, and that the plaintiff recover from the defendant Grudita Florio the said amount . . . ; " that the plaintiff have execution against Cirace for $4,963.16 and costs, and against Florio for $1,215. The defendants appealed.

The case was submitted on briefs.

*J. T. Zottoli,* for the defendants.

*D. L. Smith,* for the plaintiff.

DeCourcy, J. This bill in equity was brought by the Cosmopolitan Trust Company, through the commissioner of banks as liquidating agent, to establish the amount due it from the defendant Cirace on account of a certain promissory note; to reach and apply toward the satisfaction thereof a certain debt alleged to be due to Cirace from the defendant Florio; and for general relief. The following facts found by the master are here material:

In November, 1918, Cirace, who was engaged in the wholesale grocery business under the name " Italian Importing Company," became interested in a proposition to purchase large quantities of olives in California and ship them to Boston for sale. He made arrangements with the Fidelity Trust Company to finance the purchase, and to hold the shipments as security for its advances; and he went to California, leaving one Cataldo in full charge of his Boston

business. During his absence the business was incorporated, under the same name, "Italian Importing Company," for the sole purpose of providing a suitable medium for receiving from the Fidelity Trust Company the advances made from time to time, and giving security therefor. On the return of Cirace to Boston, the Fidelity Trust Company insisted upon further collateral to secure the advances it had made; and he executed a note for $10,000 payable to said trust company, secured by a mortgage of certain real estate on North Street owned by him. Thereafter the Fidelity Trust Company insisted that Cirace reduce the indebtedness of the Italian Importing Company, and refused to release the olives held in storage except upon the payment of approximately $40,000. A loan of $46,345 from the Cosmopolitan Trust Company was negotiated by a straw man for Cirace's benefit; a check for that amount was later made, payable to Cirace's then attorney, one Dewey; and it was indorsed by said Dewey to the Fidelity Trust Company. In connection with this transaction, and as part security for said loan, the Cosmopolitan Trust Company received from the Fidelity Trust Company through said Dewey an assignment of the mortgage.

No payment of principal or interest was made on the note. On or about July 27, 1921, the commissioner of banks, who had taken possession of the Cosmopolitan Trust Company, proceeded to foreclose the mortgage. A sale was duly held under the power in the mortgage; the property was bid in for $7,000 in the plaintiff's name, and the foreclosure deed and affidavit were duly executed and recorded. The plaintiff has never obtained possession of the premises. The defendant Florio has been in possession, through tenants holding under her at a rental of $65 per month, claiming to have a six years' lease from Cirace, antedating the mortgage. As to whether or not any such lease was in fact executed, the master was unable on the evidence to find. A final decree was entered by the single justice, in accordance with the master's findings, establishing the plaintiff's title to the premises under the foreclosure deed as against the defendants; determining the indebtedness of Cirace on the mortgage

note to be $4,963.16 and of Florio, for money received as rentals, to be $1,215; and directing executions to issue.

The defendant Cirace filed twenty-six exceptions to the master's report. More than half of them were based on objections to the master's findings of fact or to his failure to find certain other alleged facts. Manifestly we cannot revise the findings in the absence of the evidence. *Cook* v. *Scheffreen*, 215 Mass. 444. The remaining exceptions are to the admission and exclusion of certain evidence. The testimony of the witness Rich, qualifying him to give an opinion upon Cirace's signature, was admissible in the discretion of the master. *Commonwealth* v. *Meehan*, 170 Mass. 362. When it was justifiably found that the note and mortgage were executed by Cirace, these and the other papers were rightly admitted in evidence, regardless of the genuineness of the signature of Donata Cirace, who is not a party. Cirace, or some one in his behalf, presented this mortgage in its present state to the Fidelity Trust Company as security, and he is estopped to deny its genuineness. The questions with reference to the Pacific Products Corporation were properly excluded as not material to the issue that was being tried. In brief, the exceptions to the master's report were overruled rightly.

The contention of the defendant Cirace, on his appeal from the final decree, is that there was no consideration for the mortgage note. But it is apparent from the facts found by the master that Cirace was the person mainly interested financially in the undertaking to buy olives on a large scale and ship them to Boston for sale; and that, when the project proved unprofitable and it became necessary to give additional security to the Fidelity Trust Company, which had a lien on the olives in storage, this mortgage was given by him because he was the real party in interest.

The defendant Florio filed no exceptions to the report. In her answer and at the trial she claimed to hold the premises under a lease from Cirace antedating the mortgage. As already stated, the master was unable to find on the evidence whether or not such lease was in fact executed. He did find however that " during the entire period between the

acquisition by the plaintiff of title to the North Street property under the foreclosure sale, and the time of the hearings before me as master, the defendant Florio has continued to rent one room on the second floor of the building located on said property, together with the store on the ground floor thereof to said Angello at a rental of $65 a month." So far as the record discloses, Grudita Florio has never paid over this money to any one. We cannot say that the single justice was not warranted in holding her responsible to the plaintiff, in view of all the facts disclosed; whether the decree was based on the application to the debt established against Cirace of money due to him from said Florio under a lease; or upon her duty to pay over to the plaintiff, under the prayer for general relief, the rental collected by her from tenants of its property, which she holds only as a constructive trustee.

*Decree affirmed, with costs.*